74 F.3d 1250
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Terry W. ROSS, Defendant-Appellant.
 No. 94-3400.
 United States Court of Appeals, Tenth Circuit.
 Jan. 9, 1996.
 
 Before EBEL, LOGAN and BRISCOE, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Defendant Terry W. Ross appeals his conviction and sentence following a jury trial on charges of conspiracy to distribute cocaine base, in violation of 21 U.S.C. 846, possession with intent to distribute cocaine base, in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. 2, and use of a firearm in connection with drug trafficking, in violation of 18 U.S.C. 924(c) and 2.
 
 
 2
 On appeal, defendant contends that the district court erred in (1) allowing statements and testimony into evidence in violation of his Sixth Amendment rights, (2) admitting improper hearsay evidence during the government's rebuttal case, and (3) denying him an offense level reduction in sentencing for being a minor or minimal participant.
 
 
 3
 * Wichita police officers completed a controlled crack cocaine purchase in January 1994 at a Wichita, Kansas, house through a confidential informant (CI). The police then obtained a search warrant, entered the house, and arrested Kenneth E. Maloney and defendant. In their search of the house police recovered crack cocaine, marijuana, two loaded handguns, ammunition, and numerous other items commonly associated with crack cocaine distribution. In one bedroom they also found items tying defendant to the residence.
 
 
 4
 Shortly after his arrest, Maloney confessed to participating in a cocaine distribution operation. Police evidently did not attempt to interview defendant before his first court appearance. Two days after the arrest, however, while defendant was en route to his first court appearance, he volunteered inculpatory information to Detective Terry B. Fettke. He offered information about his role in the crack cocaine distribution operation, identified the supplier, and indicated his willingness to cooperate.
 
 
 5
 Before trial, defendant moved to sever his case from Maloney's, citing Bruton v. United States, 391 U.S. 123 (1968), and his belief that Maloney had implicated him in statements to law enforcement officers. After the government offered to redact portions of Maloney's statements that would incriminate Ross, the district court refused to sever the trials.
 
 
 6
 Three times during the trial, however, the jury heard statements attributed to Maloney that defendant contends incriminated him. The government also presented rebuttal testimony from Officer Don K. Bryant, over defendant's hearsay objection, regarding a conversation Bryant overheard between defendant and the CI through whom police made the controlled buy, in which defendant offered to obtain and sell crack cocaine to the CI.
 
 
 7
 At sentencing, defense counsel objected to the presentence investigation report which failed to recommend a reduction in defendant's offense level for minimal or minor participation. See U.S.S.G. 3B1.2. The district court overruled the objection and refused to reduce defendant's offense level.
 
 II
 
 8
 We turn first to the alleged Bruton violations. "The Court held in Bruton that the admission of a confession of a codefendant who did not take the stand deprived the defendant of his rights under the Sixth Amendment Confrontation Clause, when that confession implicated the defendant," Schneble v. Florida, 405 U.S. 427, 429-30 (1972), despite an admonishing jury instruction. In Schneble, the Supreme Court held that Bruton error was subject to harmless error analysis; "unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." Id. at 432. There a law enforcement officer recounted a statement by a nontestifying codefendant that implicated the defendant, but the Court held the balance of the admissible evidence, including the defendant's own confession, overwhelmingly established his guilt. The challenged testimony added no new facts; "at most [it] tended to corroborate certain details" of the defendant's confession. Id. at 431. The Court concluded that an average jury "would not have found the State's case significantly less persuasive had the testimony as to [the codefendant's] admissions been excluded." Id. at 432. Therefore the error was harmless. We review each of the three alleged Bruton violations under this standard.
 
 
 9
 In opening statement the prosecutor stated "Mr. Maloney admitted that he, in fact, lived in the house and Terry Ross lived in the house with him." IV R. 16. After the government assured the court that its case included defendant's admission to Fettke that defendant lived at the house,[2] and argued that the fact defendant lived at the house was not incriminating, the district court denied defendant's motion for mistrial. The court then and later instructed the jury that attorneys' statements are not evidence.
 
 
 10
 The prosecutor violated Bruton by this reference to Maloney's confession. But defendant's own testimony was to the effect he had no permanent address, and was aware of an outstanding warrant for his arrest. He offered no clear evidence of a permanent or temporary residence elsewhere; his brief explanation about where he stayed was vague and lacking in details. In contrast, the tangible evidence that defendant stayed at this house was very specific, albeit circumstantial. Consequently, we conclude that omitting this reference from the government's opening statement would not have weakened its case. See Schneble, 405 U.S. at 432.
 
 
 11
 The other two statements came into evidence during direct examination of Officer Fettke. First, in recounting the substance of Maloney's confession, Fettke repeated Maloney's routine for distributing cocaine: "once the shipment [of cocaine] was dropped off ... [Maloney] would then disperse the shipment through people he knew and also through people Ross knew." V R. 212. This may not have been inadvertent, as the prosecutor acknowledged "Fettke knows we are not to talk about Terry Ross' involvement as reported to him by Maloney." V R. 213. Later, Fettke restated defendant's confession, which closely tracked Maloney's description.
 
 
 12
 Q [by prosecutor]. What Mr. Ross just told you about who brought the crack cocaine to the house, was that consistent with what Mr. Maloney told you a day or two before?
 
 
 13
 A. Yes. V R. 223. The defense timely objected to both portions of Fettke's testimony, and the district court admonished the jury not to consider the first of Fettke's statements as evidence against defendant.
 
 
 14
 Fettke's statement repeating Maloney's confession that Maloney and defendant dispersed cocaine to people each knew violated Bruton because it implicated defendant without providing an opportunity for the defense to cross-examine Maloney. The government acknowledged as much on the record. But this evidence was not wholly inconsistent with defendant's trial testimony and "contributed no significant additional proof." Bond v. Oklahoma, 546 F.2d 1369, 1376 (10th Cir.1976). Defendant acknowledged going to this house and having a female companion procure crack cocaine for his personal use. He knew cocaine was in the house; his testimony describing the supplier matched that of Maloney and defendant's own confession to Fettke. His confession to Fettke acknowledged participation in a cocaine base distribution scheme. The jury heard and evidently rejected as not credible defendant's testimony to the contrary. Perhaps most important, Officer Bryant testified that he overheard and observed defendant's attempt to sell cocaine to the CI.
 
 
 15
 Fettke's testimony confirming defendant's confession about "who brought the crack cocaine to the house," V R. 223, focused the jury on the description of the supplier not on defendant's involvement. Saying that Maloney's confession was consistent with defendant's is not the same as saying Maloney identified defendant as involved in the criminal activity. Thus, this testimony did not violate Bruton; that portion of Maloney's confession did not implicate defendant.
 
 
 16
 The government argues that the Bruton violations are harmless error because the evidence of defendant's guilt was overwhelming. We agree. A significant crack cocaine operation flourished at this house. In the course of executing the search warrant, police recovered more than fifty-six grams of cocaine packaged in small baggies as if for distribution and ten grams of marijuana. Upon entering the house, the police observed defendant reclining on a couch with his arms extended up over the top and down by the front edge of the couch; they recovered most of the crack cocaine in and near the couch.[3] Defendant had $300 in cash, although he acknowledged he had been unemployed for several years. In the north bedroom, the officers found defendant's address book, a wallet with his driver's license, electronic scales, and a bag of clothing.
 
 
 17
 We endorse the comments of the district court expressing grave concern that the prosecutor promised that statements implicating defendant would be redacted, but in fact were not. The reference in opening statement was completely avoidable and within trial counsel's control. As to Fettke's reference to defendant distributing drugs, the government offered no explanation why remedial measures failed to prevent such evidence from creeping into the case.
 
 
 18
 Nevertheless, in light of the strong evidence implicating defendant, we are satisfied the brief statements objected to did not contribute significantly to persuading the jury to find defendant guilty. See Schneble, 405 U.S. at 432. A "defendant is entitled to a fair trial, but not a perfect one." Bruton, 391 U.S. at 135.
 
 III
 
 19
 Defendant next argues that the district court erred in allowing Officer Bryant to testify as a rebuttal witness. We review decisions admitting evidence for abuse of discretion. Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir.1995).
 
 
 20
 The district court permitted Bryant to recount defendant's attempted cocaine sale to the CI shortly before the controlled buy that preceded defendant's arrest. Defendant contends Bryant's testimony contained inadmissible hearsay and denied his Sixth Amendment confrontation rights because the government was not required to divulge the CI's identity.
 
 
 21
 Bryant's testimony described what the CI and defendant did and the essence of what defendant said. Defendant's statements, as admissions against interest, were not hearsay and therefore were properly admissible through Bryant. Because Bryant was careful not to repeat what the CI said, but only what happened, the prosecution was not required to reveal the CI's identity. Defendant was not indicted for any activity in which the CI participated and has not shown that identifying the CI would help his defense. See United States v. Brantley, 986 F.2d 379, 383 (10th Cir.1993) (CI not participant in or witness to crime; identity need not be disclosed); United States v. Martinez, 979 F.2d 1424, 1429 (10th Cir.1992) (when in camera hearing indicates CI cannot aid the defense, government's interest in keeping his identity secret prevails), cert. denied, 113 S.Ct. 1824 (1993). The district court did not err in allowing Bryant's testimony.
 
 IV
 
 22
 Defendant asserts the district court erred in refusing to reduce his offense level for minimal or minor participation. See U.S.S.G. 3B1.2. Defendant argues that the district court failed to make specific findings as to his role in the offense, and seeks a remand on this issue. A trial court's findings regarding a defendant's role in an offense are factual findings that we review for clear error. United States v. Santistevan, 39 F.3d 250, 253-54 (10th Cir.1994). The defendant carries the burden of establishing by a preponderance of the evidence that he is entitled to a reduction in offense level. Id. at 254.
 
 
 23
 Before sentencing, defendant wrote to the probation office stating (in contrast to his trial testimony denying involvement except as a crack cocaine user) that he "worked for Mr. Maloney delivering packages of drugs for him." VII R. 18, p 99 (quoting letter from defendant). He then objected to the presentence report for failing to recommend either a two- or four-level reduction in his offense level. He contended that his participation was limited to one day, and to delivering small packages of crack cocaine for Maloney. At sentencing he further asserted that his acquittal on one firearms charge for which Maloney was convicted proves his lesser culpability. At sentencing, the district court recited some of the evidence and stated that it adequately supported the conspiracy charge.
 
 
 24
 Drug courier status alone does not automatically qualify a defendant for a 3B1.2 adjustment. United States v. Donaldson, 915 F.2d 612, 615 (10th Cir.1990). Further, acquittal on one firearm charge does not reflect on defendant's culpability on the drug charges which are the focus of his 3B1.2 arguments. Defendant has not proven by a preponderance of the evidence that he was entitled to a downward adjustment for his role in the offense.
 
 
 25
 More fundamentally, the district court is not required to state specific reasons for refusing to reduce a defendant's offense level for minor participation. Donaldson, 915 F.2d at 615. The question is simply whether the record supports the underlying findings upon which the district court refused to reduce defendant's offense level. Because defendant has not shown that those underlying factual findings are clearly erroneous, we will not disturb the district court's refusal to make a downward adjustment.
 
 V
 
 26
 We raise one issue sua sponte. While this appeal was pending the Supreme Court decided Bailey v. United States, 64 U.S.L.W. 4039, 1995 WL 712269 (Dec. 6, 1995), which raises questions concerning defendant's conviction on the firearm charge. Rather than requiring defendant to file a post-conviction petition on this issue, we remand to the district court for a factual determination whether defendant actively used a firearm in relation to the drug trafficking offenses of conviction. See IV R. 126. Bailey may require reversal of defendant's conviction under 18 U.S.C. 924(c)(1), depending on whether he "used" or "carried" the firearm as 924(c)(1) has been interpreted by that decision.
 
 
 27
 AFFIRMED in part, and REMANDED in part, with instructions.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 No such admission by Maloney was ever admitted into evidence
 
 
 [3]
 Police also found other evidence commonly associated with drug distribution: two sets of scales, small baggies, latex gloves, baking soda, and test tubes containing cocaine residue. They confiscated two loaded guns, additional ammunition fitting those guns and other firearms, and $1450 in cash. The officers found a pipe for smoking cocaine, a stolen Wichita police radio, a police scanner equipped with an 800 megahertz converter, and marijuana. (The Wichita police operated on the 800 megahertz frequency.) The officers searched two safes, one in the southwest bedroom containing over $400 in food stamps, jewelry, collectible coins and watches, the other in the southeast bedroom containing cocaine. Maloney had either $490 or $390 on his person, including some of the money from the controlled buy