**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 21 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JIMMY DON RIGGS,

      Petitioner-Appellant,

v.

JOE WILLIAMS, Warden, Lea County
Correctional Facility,

      Respondent-Appellee.

No. 03-2003
(D.C. No. CIV-97-1001 BB/LCS)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **O'BRIEN** and **BALDOCK** , Circuit Judges, and **BRORBY** , Senior Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner-appellant Jimmy Don Riggs appeals the district court's order dismissing his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 2253(c), the district court granted petitioner a certificate of appealability (COA) on the issue of whether the New Mexico Supreme Court reached a decision in petitioner's direct appeal that was contrary to federal law as enunciated in *California v. Trombetta*, 467 U.S. 479 (1984). R., Doc. 66. Although not expressly stated in the district court's COA order, we believe the district court also intended to grant petitioner a COA on the issues of: (1) whether the New Mexico Supreme Court reached a decision that was contrary to *Arizona v. Youngblood*, 488 U.S. 51 (1988); and (2) whether petitioner has established a due process violation under *Youngblood*. Thus, we expand petitioner's COA to include these issues, and we note that petitioner is seeking relief in this appeal only under *Youngblood*. *See* Aplt. Br.-In-Chief at 16-21.

Having thoroughly reviewed this matter, we conclude that petitioner has failed to establish a due process violation under *Youngblood*. Accordingly, we affirm the dismissal of petitioner's habeas petition on that basis, and we do not need to decide whether the New Mexico evidence preservation standards are contrary to *Youngblood*.

I.

Petitioner was convicted in a New Mexico state court of first degree murder, and he received a life sentence. The background facts pertaining to petitioner's conviction are set forth in the opinion of the New Mexico Supreme Court in petitioner's direct appeal. *See State v. Riggs*, 838 P.2d 975, 976-77 (N.M. 1992).

At trial, the primary witness against petitioner was his roommate, Jimmy Clark. Clark testified that he was in the house he shared with petitioner when petitioner shot the victim, and he testified that he heard two gunshots and then saw petitioner dragging the victim's body across the kitchen floor. *Id.* at 976. Although Clark denied any involvement in the murder, he testified that he assisted petitioner in disposing of the victim's body and the gun used in the murder. *Id.* at 977.

In his direct appeal, petitioner claimed that he was denied a fair trial and the right to effectively cross-examine Clark because the police failed to test or preserve a pair of tennis shoes that they seized from Clark during their investigation of the murder. *Id.* Specifically, Officer Earl Nymeyer testified at petitioner's trial that over thirty days after the murder during a police interview

with Clark he saw "brown spots" on the shoes. Trial Cassette Tape No. 19. [1] He seized the shoes and sent them to the state crime lab for testing. *Id.* According to Officer Nymeyer, when the shoes were returned from the state crime lab, the lab had "no results to report," and the shoes were subsequently returned to Clark. *Id.* In addition, Kristin Radecki, a forensic serologist at the New Mexico state crime lab, testified that she received a number of items collected by the police during their investigation of the murder, and she tested each of the items for the presence of blood. Trial Cassette Tape No. 21. According to Ms. Radecki, the items she received for testing did not include Clark's shoes. *Id.*

The New Mexico Supreme Court affirmed petitioner's murder conviction based on its prior decision in *State v. Chouinard*, 634 P.2d 680 (N.M 1981). Under *Chouinard*, a defendant's conviction will not be reversed unless: "1) [t]he State either breached some duty or intentionally deprived the defendant of evidence; 2) [t]he improperly 'suppressed' evidence [was] material; and 3) [t]he suppression of this evidence prejudiced the defendant." *Riggs*, 838 P.2d at 978 (citing *Chouinard*, 634 P.2d at 683). Applying this three-part test, the New Mexico Supreme Court "[assumed] arguendo that the State either intentionally or negligently deprived [petitioner] of the shoes," but the court upheld petitioner's

---

[1] All citations herein to trial cassette tapes are to tapes from petitioner's second trial in April 1991.

conviction because it "[found] neither materiality of the shoes to the defense nor resulting prejudice." *Id.*

## II.

Petitioner claims that he is entitled to habeas relief under 28 U.S.C. § 2254 because: (1) the New Mexico Supreme Court reached a decision that was contrary to *Youngblood* ; and (2) the State of New Mexico violated *Youngblood* because Clark's shoes were potentially exculpatory, and the police acted in bad faith in failing to test or preserve the shoes. The district court addressed the first issue and determined that the New Mexico Supreme Court's application of *Chouinard* was not contrary to *Youngblood* . R., Doc. 63 at 1. The district court also concluded that petitioner had failed to establish a due process violation under *Youngblood* because he had failed to show that the police acted in bad faith. *Id.* at 2. Because we agree with the latter conclusion, we do not reach the issue of whether the New Mexico Supreme Court's application of *Chouinard* was contrary to *Youngblood* .

Under *Youngblood* , a defendant can establish a due process violation if he can show that: (1) the government failed to preserve evidence that was "potentially useful" to the defense; and (2) the government acted in bad faith in failing to preserve the evidence. *Youngblood* , 488 U.S. at 58. With respect to the latter, threshold, requirement, the inquiry into bad faith "must necessarily turn on

the police's knowledge of the exculpatory value of the evidence." *Id.* at 57 n.*.

We have recognized that the "mere fact that the government controlled the evidence and failed to preserve it is by itself insufficient to establish bad faith." *United States v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994) (quotation omitted). This is true even if the government acted negligently, *id.* at 912, or even intentionally, so long as it did not act in bad faith.[2]

The issue of bad faith under *Youngblood* is a mixed question of law and fact in which the quintessential factual question of intent predominates, and we normally review it for clear error. *Id.* at 909. Because the district court did not conduct an evidentiary hearing, however, "we conduct an independent review of the district court's decision." *Cook v. McKune*, 323 F.3d 825, 831 (10th Cir.

---

[2] *Youngblood's* bad faith requirement "limits the extent of the police's obligation to preserve evidence to . . . that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58. This is a logical extension of the Supreme Court's decision in *Trombetta* because a defendant is not entitled to relief under *Trombetta* unless he can show that the police "destroy[ed] evidence whose exculpatory significance [was] 'apparent before' destruction." *Bohl*, 25 F.3d at 910 (quoting *Trombetta*, 467 U.S. at 489). Petitioner cannot make this showing because "[t]he possibility that the [shoes] could have exculpated [petitioner] if preserved or tested is not enough to satisfy the standard of constitutional materiality in *Trombetta.*" *Youngblood*, 488 U.S. at 57 n.*. In other words, petitioner "has not shown that the police knew the [shoes] would have exculpated him when they failed to perform certain tests or to [preserve] the [shoes]; this evidence was simply an avenue of investigation that might have led in any number of directions." *Id.*

2003). Having conducted an independent review, we agree with the district court that petitioner has failed to establish that the police acted in bad faith. *See United States v. Donaldson*, 915 F.2d 612, 614 (10th Cir. 1990) (noting that "it is the defendant who bears the burden of showing bad faith under *Youngblood*").

The evidence introduced at petitioner's trial established that the police suspected that the brown spots on Clark's shoes were blood. The evidence also established that the police returned the shoes to Clark after the state crime lab either failed to test the shoes or never received the shoes for testing. This evidence is insufficient to establish a due process violation under *Youngblood*. To begin with, petitioner has offered no legal authority to support his claim that the police had a duty to test the shoes, and *Youngblood* supports the opposite conclusion. *See Youngblood*, 488 U.S. at 59 (rejecting argument that "the Due Process Clause is violated when the police fail to use a particular investigatory tool," and noting that "the police do not have a constitutional duty to perform any particular tests"). Further, while the police may have failed to preserve the shoes, there is no evidence in the record to support petitioner's claim that the shoes were returned to Clark as part of a bad faith attempt by the police to destroy their potential exculpatory value. Consequently, petitioner has failed to establish a violation of *Youngblood*.

The judgment of the district court is AFFIRMED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge